# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF FLORIDA

| | | |
|---|---|---|
| YOLANDA HUDSON, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | No. 1:13-CV-21070-BLOOM/VALLE |
| | § | |
| TEVA PHARMACEUTICALS USA, | § | |
| INC., TEVA BRANDED | § | |
| PHARMACEUTICAL PRODUCTS | § | |
| R&D, INC., JOHN DOE #1 THROUGH | § | |
| JOHN DOE #10, | § | |
| Defendants. | § | |

**DEFENDANTS TEVA PHARMACEUTICALS USA, INC. AND TEVA BRANDED
PHARMACEUTICAL PRODUCTS R&D, INC.'S
<u>MOTION FOR SUMMARY JUDGMENT</u>**

## **TABLE OF CONTENTS**

**Page**

MEMORANDUM OF LAW ........................................................................................ 1

BACKGROUND ...................................................................................................... 3

    A.    Plaintiff's Allegations in the Amended Complaint.................................. 3

    B.    ParaGard's Warnings and the Knowledge of Plaintiff's Prescribing Doctor ......... 4

    C.    Plaintiff's Expert Opinions ...................................................... 6

ARGUMENT .......................................................................................................... 11

I.     PARAGARD'S WARNINGS WERE "ACCURATE, CLEAR, AND UNAMBIGUOUS." ........................................................................... 12

II.    PLAINTIFF'S CLAIMS ARE BARRED BY LACK OF PROXIMATE CAUSATION. ...................................................................................... 16

    A.    Dr. Jacques Was Independently Aware of the Risks Associated With ParaGard. ...................................................................... 16

    B.    There Is No Evidence That Dr. Jacques Would Not Have Prescribed ParaGard Had Plaintiff's Alternative Warning Been Included in ParaGard's Labeling. ...................................................... 17

III.    PLAINTIFF'S CLAIMS ARE BARRED BY FLA. STAT. § 768.1256. .......... 18

IV.    PLAINTIFF CANNOT PROVE GENERAL OR SPECIFIC CAUSATION. ......... 19

CONCLUSION ..................................................................................................... 20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderson v. Liberty Lobby. Inc.*
  477 U.S. 242 (1986) ............................................................................... 12

*Cornelius v. Cain*,
  No. CACE 01-020213(02) 2004 WL 48102 (Fla. Cir. Ct. Jan. 5 2004) ................... 14

*E.R. Squibb & Sons, Inc. v. Farnes*
  697 So. 2d 825, 827 (Fla. 1997) ............................................................... 16

*Felix v. Hoffmann-La Roche, Inc.*
  540 So. 2d 102 (Fla. 1989) ......................................................... 1, 13, 17

*G.P. v. Evenflo Co., Inc.*
  609 F.3d 1183 (11th Cir. 2010) ..................................................................... 3

*Hendrix ex rel. G.P. Evenflo Co., Inc.*
  609 F.3d 1183 (11th Cir. 2010) ................................................................ 21

*Hoffman-LaRoche, Inc. v. Mason*
  27 So. 3d 75 (Fla. App. 2009) ............................................................ 2, 19

*Horrillo v. Cook Inc.*
  No. 10-15327, 2012 WL 6553611
  (11th Cir. Nov. 7, 2012) ........................................................................ 17

*In re Aredia and Zometa Prods. Liab. Litig.*
  No. 3:06-MD-1760, 2010 WL 813459
  (M.D. Tenn. Mar. 3, 2010) ...................................................................... 20

*McClain v. Metabolife Int'l, Inc.*
  401 F.3d 1233 (11th Cir. 2005) ............................................................... 21

*Rollins v. Tech South, Inc.*
  833 F.2d 1525 (11th Cir. 1987) ............................................................... 12

*Upjohn Co. v. MacMurdo*
  562 So. 2d 680 (Fla. 1990) .................................................................... 13

**Statutes**

21 U.S.C. § 355(a) .................................................................................. 19

21 U.S.C. § 393(b)(2)(B) ........................................................................................................... 19

FLA. STAT. § 768.1256 ............................................................................................................ 18

**Other Authorities**

Fed. R. Civ. P. 56(a) ................................................................................................................ 11

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendants Teva Pharmaceuticals USA, Inc. and Teva Branded Pharmaceutical Products R&D, Inc. (collectively, "Teva") respectfully move this Court to enter summary judgment for Teva on all claims in Plaintiff's Amended Complaint.

This motion is supported by the incorporated memorandum of law and Local Rule 56.1 Statement of Undisputed Material Facts.

## MEMORANDUM OF LAW

This is a product liability action in which Plaintiff alleges that she suffered injuries requiring surgery as a result of her use of a ParaGard® T 380A Intrauterine Copper Contraceptive ("ParaGard"), an intrauterine device manufactured and marketed by Teva.  (*See* Am. Compl., ¶ 7.)  Though Plaintiff's Amended Complaint includes three causes of action, each of these asserts that ParaGard was defective due to inadequate warnings.  (*See* Mar. 20, 2014 Order Denying Defendants' Motion to Dismiss at 7 [D.E. 49] ("the Court is unable to conclude that the allegations in Counts I and III are independent of those in Count II—as each of the Counts refers to the allegedly insufficient warning.").)  The record in the case is now closed, and Plaintiff cannot meet her burden of showing any genuine issue of fact for the jury to decide.

Summary judgment is warranted for the following four reasons:

***First***, Plaintiff has no admissible evidence that ParaGard's warnings were inadequate. Under Florida law, a prescription drug manufacturer's duty to warn runs to the doctor, not the patient. *Felix v. Hoffmann-La Roche, Inc.*, 540 So. 2d 102, 104 (Fla. 1989).  And where, as here, the warnings to the doctor are "accurate, clear and unambiguous," they are adequate as a matter of law.  *Id.* at 105.  ParaGard's labeling clearly and unambiguously warned of the very same events alleged by Plaintiff in her Amended Complaint:  that ParaGard can perforate the uterine wall, migrate to the abdominal cavity, cause damage to adjacent organs, and require surgical

removal.  Plaintiff has no admissible evidence to the contrary.  Indeed, both of Plaintiff's proffered experts concede, as they must, that they are not warnings experts and lack the expertise to opine on the adequacy of the ParaGard's warnings.  (June 24, 2015 Deposition of M. Starke ("Starke Dep.") at 40-41 (attached as Exh. 7); June 24, 2015 Deposition of R. Bridgewater ("Bridgewater Dep.") at 165 (attached as Exh. 6).)  And notably, both of Plaintiffs' proffered experts concede that they were aware of and fully understood ParaGard's warnings, specifically the risks of perforation and migration.  (Starke Dep. at 40; Bridgewater Dep. at 30-32.)

*Second*, Plaintiff's claims fail for lack of proximate causation.  Plaintiff's prescribing doctor, Dr. Elvire Jacques, testified at length regarding her extensive knowledge of the risks associated with ParaGard and other IUDs, including the risks that an IUD can perforate the uterine wall, migrate to the abdominal cavity, cause damage to adjacent organs, and require surgical removal.  Dr. Jacques' independent knowledge breaks the chain of causation between any purported inadequacies in ParaGard's warnings and Plaintiff's alleged injuries.  *See Felix*, 540 So. 2d at 104.  Further, Plaintiff has no evidence that any "alternative warning" her proffered experts might propose (based on their preferences and speculation and nothing more) would have resulted in Dr. Jacques not prescribing ParaGard for Plaintiff.  Without such evidence, summary judgment is warranted.  *See Hoffmann-LaRoche, Inc. v. Mason*, 27 So. 3d 75, 76 (Fla. App. 2009) (per curiam).

*Third*, Florida law creates a rebuttable presumption that a product in compliance with government standards is not defective.  This presumption applies in this case and Plaintiff has no evidence to rebut it.

*Fourth*, even if Plaintiff's claims could survive the learned intermediary doctrine and Florida's government standards presumption (which they cannot), summary judgement is

nevertheless appropriate because Plaintiff cannot prove either general or specific causation.  To meet her burden of proof, Plaintiff must come forward with evidence of both general causation—i.e., clinical or epidemiological studies or peer-reviewed medical literature stating that ParaGard *can* cause Plaintiff's alleged injuries (gastroparesis, seizures, neurological issues)—as well as evidence of specific causation—i.e., admissible expert opinion grounded in differential diagnoses that ParaGard *did in fact* cause Plaintiff's alleged injuries.  *See generally Hendrix ex rel. G.P. v. Evenflo Co., Inc.*, 609 F.3d 1183 (11th Cir. 2010).  Plaintiff has failed to do so here. Both of her proffered experts disclaim the necessary expertise to opine on the cause of Plaintiff's alleged injuries and, in fact, they admit that they have no such opinions.  (Starke Dep. at 14; Bridgewater Dep. at 132, 144-45.)

For each of these independent reasons, the Court should enter summary judgment for Teva and dismiss Plaintiff's claims with prejudice.

## BACKGROUND

### A.   Plaintiff's Allegations in the Amended Complaint

Plaintiff's Amended Complaint includes three causes of action.  Plaintiff's first cause of action is titled "Strict Products Liability."  (*See* Am. Compl., ¶¶ 38-46 [D.E. 28].)  Plaintiff's second cause of action is titled "Strict Liability Failure to Warn."  (*See id.*, ¶¶ 47-64.)  Plaintiff's third cause of action is titled "Strict Liability Manufacturer's Defect."  (*See id.*, ¶¶ 65-78.) Though the titles of the first and third causes of action suggest a design or manufacturing defect claim, Plaintiff has not alleged any such defect.  Rather, each of Plaintiff's causes of action addresses the adequacy of ParaGard's warnings:

First Cause of Action:  "Strict Products Liability"

- Paragraph 39:  "The Paragard Intrauterine Device was defective or created an unreasonably dangerous condition in that it caused injuries to the Plaintiff above what was expected by reading the warnings outlined on the product's label."

- Paragraph 42:  "After reading Defendant's warning label on the ParaGard Intrauterine device, consumers including Plaintiff, and/or attending physician would have to pile inference upon inference to be able to conclude that the injury sustained by the Plaintiff would be possible."

Second Cause of Action:  "Strict Liability Failure to Warn"

- Paragraph 55:  "Although the warning label does list perforation and embedment in the myometrium and damage to adjacent organs if it is left in the peritoneal cavity, this is far from a model of clarity to warn of the damage complained of by Plaintiff."

- Paragraph 57:  The ParaGard Intrauterine Device (IUD) was unreasonably dangerous, as the injuries complained of [were] more severe than [were] contemplated by Plaintiff'[s] doctor, or Plaintiff.  Plaintiff's injuries by far, supersede the risks as outlined on the warning label."

Third Cause of Action:  "Strict Liability Manufacturer's Defect"

- Paragraph 66:  "The ParaGard Intrauterine Device was defective or created an unreasonably dangerous condition in that the injuries to the Plaintiff far exceeded those outlined on the warning label."

- Paragraph 74:  "The product was defective and unreasonably dangerous as the injuries sustained by the Plaintiff exceeded the outlined injuries listed on the warning label of the ParaGard Intrauterine Device (IUD)."

(*See also* Mar. 20, 2014 Order Denying Defendants' Motion to Dismiss [D.E. 49] at 7 ("the Court is unable to conclude that the allegations in Counts I and III are independent of those in Count II—as each of the Counts refers to the allegedly insufficient warning.").)

### B.      ParaGard's Warnings and the Knowledge of Plaintiff's Prescribing Doctor

Among other warnings, ParaGard's labeling expressly warned of the risks that ParaGard can perforate the uterine wall, migrate to the abdominal cavity, cause damage to adjacent organs, and require surgical removal:

---

**WARNINGS**

4

**5. Embedment**

Partial penetration or embedment of ParaGard® in the myometrium can make removal difficult.  **In some cases, surgical removal may be necessary.**

**6. Perforation**

**Partial or total perforation of the uterine wall** or cervix may occur rarely during placement, although it may not be detected until later. **Spontaneous migration** has also been reported.  If perforation does occur, remove ParaGard® promptly, since the copper can lead to intraperitoneal adhesions.  Intestinal penetration, intestinal obstruction, and/or **damage to adjacent organs may result** if an IUD is left in the peritoneal cavity. Pre-operative imaging followed by laparoscopy or laparotomy is often required to remove an IUD from the peritoneal cavity.

---

**ADVERSE REACTIONS**

The most serious adverse events associated with intrauterine contraception are discussed in WARNINGS and PRECAUTIONS.  These include:

>Intrauterine pregnancy
>Septic abortion
>Ectopic pregnancy
>Pelvic infection
>**Perforation**
>**Embedment**

---

**INFORMATION FOR PATIENTS**

**What side effects can I expect with ParaGard®?**

- Difficult removals:  Occasionally ParaGard® may be hard to remove because it is stuck in the uterus.  **Surgery may sometimes be needed to remove ParaGard®.**

- Perforation:  **Rarely, ParaGard® goes through the wall of the uterus, especially during placement.  This is called perforation.**  If ParaGard® perforates the uterus, it should be removed.  **Surgery may be needed.** Perforation can cause infection, scarring, or **damage to other organs.**  If ParaGard® perforates the uterus, you are not protected from pregnancy.

---

(*See* ParaGard® T 380A Package Insert (approved Sept. 1, 2005) at 7, 9, 19 (attached as Exh. 5) (emphases added).)

During her deposition, Plaintiff's prescribing doctor, Dr. Elvire Jacques, testified regarding her extensive familiarity with ParaGard.  (June 3, 2015 Deposition of E. Jacques ("Jacques Dep.") at 9-10 (attached as Exh. 11).)  Dr. Jacques testified that, since her residency, she has known of the risks that ParaGard can perforate the uterine wall and migrate to the abdominal cavity, where it can penetrate organs including the sigmoid colon.  (*Id*. at 13, 14-15. *See also id*. at 67 (Q. "Okay.  And you knew since your residency that if—a possible event was that the IUD could perforate or migrate out of Ms. Hudson's uterus and penetrate into her sigmoid colon, correct?"  A. "Yes, sir.")  This, she stated, is potentially a life threatening injury and requires immediate surgery to remove the IUD.  (*Id*. at 14-16.)  Dr. Jacques testified that her familiarity with these risks was due both to (1) her own training and experience, including her experience removing IUDs from patients' abdominal cavities, and (2) her review of ParaGard's labeling.  (*Id*. at 13, 68.)

### C.    Plaintiff's Expert Opinions

Plaintiff has submitted disclosures from two purported experts:  Dr. Michelle Starke and Dr. Richard Bridgewater.[1]  (*See* May 30, 2015 Corrected Amended Expert Witness Disclosure at 7-17, 64-73 [D.E. 107].)  Both Dr. Starke and Dr. Bridgewater are OB/GYNs in private practice in South Florida.  (*Id*. at 15, 70.)  Neither has testified as an expert prior to this case.  (Starke Dep. at 7 (attached as Exh. 7); Bridgewater Dep. at 55 (attached as Exh. 6).)

### 1.    Dr. Michelle Starke

---

[1]    Plaintiff filed a disclosure from a third expert, Mari Truman, but subsequently notified Teva that Plaintiff had withdrawn Ms. Truman as an expert.  (*See* June 5, 2015 Email from J. Oster to J. Levy (attached as Exh. 52).)

As set forth in the accompanying *Daubert* Motion, Dr. Starke has formed no admissible opinions.   She reviewed a preliminary set of case materials cherry-picked by Plaintiff's counsel and prepared an unsigned "rough draft" of her disclosure that was not supposed to be submitted to the Court.   *(See* Starke Dep. at 44 (Q. "Well, that's okay.   I just wanted to make sure that I had the sentence—"   A. "—there's typos and there's everything in here **because it wasn't supposed to be, you know, an official one.**") (emphasis added).)   In fact, Dr. Starke testified that she told Plaintiff's counsel on numerous occasions that she could not form opinions in this case unless and until Plaintiff's counsel provided her with requested medical records, and Plaintiff's counsel never provided these records:

> Q.      —there is a reference there that says, her current status is.
>
> A.      Okay.
>
> Q.      And why does that say that?
>
> A.      Because the attorney who originally hired me to be an expert witness, you know, **he only sent me part of the records.   I kept calling him and e-mailing him saying, please send me more records, I need specific records, and he—they would—his secretary would send me the same records over and over again but not the stuff that I needed**, and then he finally—you know, I was busy, I got busy, and it was like, you know what, I'm just— you know, just get it to me.   I won't do anything till I get the records.   **So then finally he comes to me and he says, do you think you can write some kind of an expert witness statement with the records that you have, and I said, let me give you a rough draft of what I can do for you, but I can't finish it because I don't have all the records, and so this was my rough draft,—**
>
> Q.      Okay.
>
> A.      —and then **I said to him, we need to talk about this, and he never got back to me**,—
>
> Q.      Okay.

7

> A.　—and then I thought this case was gone, **and then all of a sudden, I heard that there was a deposition and, you know, so this isn't even actually a finished draft for me.**

(*Id*. at 34-35 (emphases added).)  For this reason, Dr. Starke testified that she could not reach any conclusion as to the cause of Plaintiff's alleged injuries and that it was "very difficult" for her to reach any conclusions at all about Plaintiff's medical condition.  (*Id*. at 37 (Q. "Not having all those records, are you really able to conclude anything?"  [objection]  A. "It's very difficult.").)

Regarding the adequacy of ParaGard's warnings, Dr. Starke conceded that ParaGard's labeling expressly warned of "partial or total perforation of the uterine wall," "spontaneous migration," "[i]ntestinal penetration" and "[d]amage to adjacent organs," and the potential for surgery to remove ParaGard, and that she understood these warnings**.**  (*Id*. at 30-32 (Q. "And so each of those statements that we just talked about being in the package insert, without going through them in detail, but your position practicing in this area, you understand the meaning of all these terms; correct?"  A. "Yes.").)  The closest thing to an opinion on ParaGard's warnings offered by Dr. Starke is her observation that ParaGard's labeling "fails to mention that 15% of all migrated IUDs end up in the intestine" (although she does not directly identify this omission as a defect or inadequacy in the warning).  (May 30, 2015 Corrected Amended Expert Witness Disclosure at 67 [D.E. 107].)  However at deposition, she fully disclaimed any opinion that ParaGard's warnings should have been different, that the FDA would have approved different warnings, or that she has any expertise in this regard:

> Q.　And so are you expressing an opinion that you actually believe that the package insert should be different or are you just noting that it doesn't have that data [that 15 percent of migrated IUDs end up in the intestine]?
>
> A.　I'm noting that it doesn't have that data and that maybe if that data did exist, that the patient may have chosen a different contraceptive.

(Starke Dep. at 41-42.)

> Q.  Okay, but you're not—first off, you don't have any FDA regulatory experience or anything like that?
>
> A.  No.
>
> Q.  Rendering opinions about package inserts and whether they're consistent with what the FDA does or doesn't want in them?
>
> A.  Correct.[2]

(*Id.* at 40-41. *See also id.* at 41-42 (Q. "But the propriety of including percentages of that nature, whether that's something that is acceptable to FDA or not acceptable to FDA, you're not rendering any opinions about that?"  A. "No.").)

Dr. Starke herself prescribes ParaGard and confirmed that she understands its risks. (Starke Dep. at 40-41.)

### 2.  Dr. Richard Bridgewater

Unlike Dr. Starke, Dr. Bridgewater does intend to try to offer an opinion that ParaGard's warnings were inadequate.  At deposition, Dr. Bridgewater clarified that this opinion is limited to a single issue:  he believes that the version of ParaGard's labeling approved by the FDA in 2005 and in effect at the time of Plaintiff's ParaGard insertion should have included language from the prior version of the label identifying the specific types of organ damage that ParaGard can cause:

---

[2]  Neither Dr. Starke nor Plaintiff's other proffered expert, Dr. Richard Bridgewater, is knowledgeable about the process for approval of prescription drug labeling, including product warnings.  Teva's expert, Dr. Kenneth Blank, has offered unrebutted opinions that prescription drug labeling is the subject of "intense review" by the FDA and that "[t]he FDA exerts close control over the labeling, including the exact wording of the labeling."  (June 3, 2015 Rebuttal Expert Disclosure of Kenneth Blank, M.D., F.A.C.O.G. at 4 (attached as Exh. 53).)  Dr. Blank has also offered opinions that ParaGard's labeling during the relevant time period was "reasonable, adequate and appropriate" both as a general matter and with regard to the specific risks of perforation and migration, and that the alternative warning proposed by Dr. Bridgewater was not reasonable and would not have been permitted by the FDA.  (*Id.* at 6, 7.)

> Q.     Let me ask you this question:  Your only complaint with this language is that it is missing the language that reads "abdominal adhesions, intestinal penetration, intestinal obstruction, local inflammatory reaction with abscess formation and erosion of adjacent viscera."  Your complaint is that all of those things have been reduced to "damage to adjacent organs."
>
> A.     Yes.

(*Id*. at 201.  *See also id*. at 313 (Q. "You don't like the labeling that Miss—that accompanied Miss Hudson's ParaGard because you think it's missing those six phrases?"  A. "Six critical—right.").)

Notably, Dr. Bridgewater's critique of ParaGard's label is factually incorrect—the label in effect at the time of Plaintiff's ParaGard insertion specifically warned of "intestinal penetration" (the event about which plaintiff complains), "intestinal obstruction," and "adhesions" to intraperitoneal (abdominal) organs.  (*See* ParaGard® T 380A Package Insert (approved Sept. 1, 2005) at 7, 9, 19 (attached as Exh. 5).)  Dr. Bridgewater also admitted that he had not done any study of his proposed alternative warning, nor could he speak to whether FDA would have approved it.  (*Id*. at 175, 183.)  And Dr. Bridgewater conceded that he does not have specialized training or experience with regard to prescription drug warnings.  (*Id*. at 165 (Q. "You're not a warnings expert, are you?"  A. "No ma'am.  I'm not a warning expert.").)

Regarding causation, Dr. Bridgewater's disclosure discussed his hypothesis that Plaintiff may have experienced a "delayed migration" of her IUD.  (May 30, 2015 Corrected Amended Expert Witness Disclosure at 9, 11 [D.E. 107].)  However, at deposition Dr. Bridgewater conceded that he does not have the information to comment or offer this opinion.  (Bridgewater Dep. at 113 (Q. "As you sit here today, you cannot tell us, with any degree of certainty, whether Miss Hudson's perforation occurred at the time of insertion or later.  That's not something that you know?"  A. "Because I don't have information on it, I can't comment on it.").)

In addition, Dr. Bridgewater clarified at deposition that he was offering no opinion as to general or specific causation of Plaintiff's alleged injuries.  Rather, he opines simply that perforation of Plaintiff's uterine wall and migration of ParaGard into Plaintiff's sigmoid colon necessitated her surgery in March 2009 (a point not in dispute).  This is because Dr. Bridgewater is not qualified to offer an opinion on the cause of Plaintiff's other alleged injuries (a point he concedes) and performed no analysis that would permit him to offer such an opinion:

> Q.    Okay.  You have not done any differential diagnosis with respect to any of the injuries that Miss Hudson claims, other than the surgical removal of her IUD?
>
> A.    My focus was on the surgical removal and the immediate complications related to the ParaGard intrauterine device and her abdomen leading to the [ ] utero-colonic fistula and the immediate postoperative complications related to that.  The differential diagnoses were focused on those immediate things at that time.

(*Id*. at 134-135.)

Dr. Bridgewater also firmly disclaimed any opinion that ParaGard is defective.  (*Id*. at 44 (Q. "I assume that you agree with me that it is not your opinion that ParaGard—that all ParaGard is defective?"  A. "No, it's not my opinion that all ParaGard is defective.").  *See also id*. at 112 (Q. "Can you identify any IUD anywhere in the world that's better than ParaGard?"  A. "No.").)

## ARGUMENT

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must establish the absence of a genuine issue of material fact and, if successful, the burden shifts to the non-moving party to offer "sufficient evidence of every element that he or she must prove."  *Rollins v. Tech South, Inc.*, 833 F.2d 1525, 1528 (11th Cir. 1987).  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment[.]"  *Anderson v. Liberty Lobby. Inc.*, 477 U.S.

242, 247-48(1986) (emphasis omitted).  Rather, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted."  *Id*. at 248.

No material fact that might affect the outcome of this case remains in dispute, and the facts demonstrate that Teva is entitled to summary judgment on each of Plaintiff's claims.

## I.    PARAGARD'S WARNINGS WERE "ACCURATE, CLEAR, AND UNAMBIGUOUS."

Under Florida law, a prescription drug manufacturer's duty to warn runs to the prescribing doctor, not the patient.  *Felix*, 540 So. 2d at 104.  That is so because the prescribing doctor, acting as a "learned intermediary" between the manufacturer and patient, weighs the prescription drug's benefits against its potential harms in order to decide whether it is appropriate to the patient's needs.  *Id*.  This "duty to warn" requires that the manufacturer provide a warning that is sufficient to inform the prescribing doctor of the risks associated with use of the prescription drug.  *Upjohn Co. v. MacMurdo*, 562 So. 2d 680, 683 (Fla. 1990).

Where the warning is "accurate, clear, and unambiguous," the adequacy of the warning is a question of law for the court.  *Felix*, 540 So. 2d at 105.  *Felix* involved a claim by a woman who took the drug Accutane during pregnancy, whose child was born with severe birth defects.  *Id*. at 103.  She alleged that the manufacturer of Accutane failed to provide adequate warnings of the dangers of using the drug during pregnancy.  *Id*. at 103.  However, in multiple locations, the package insert for Accutane warned of "teratogenicity," or the potential for birth defects, and advised that:

> Although no abnormalities of the human fetus have been reported thus far, animal studies with retinoids suggest that teratogenic effects may occur.  It is recommended that contraception be continued for one month or until a normal menstrual period has occurred following discontinuation of Accutane therapy.

12

*Id*.  On the defendants' motion for summary judgment, the trial court held the warnings in the package insert were adequate as a matter of law, and both the Florida appellate court and Florida Supreme Court affirmed.  *Id*. at 104.  Similarly, in *Cornelius v. Cain*, a Florida state court considered a claim on behalf of a man who died after he abused the drug OxyContin.  No. CACE 01-020213(02) 2004 WL 48102, at *1 (Fla. Cir. Ct. Jan. 5 2004).  The plaintiff alleged that the package insert for OxyContin did not adequately warn of OxyContin's potential for abuse.  *Id*.  But on the defendants' motion for summary judgment, the court concluded that OxyContin's manufacturer had satisfied its duty by providing clear and unambiguous warnings, including that:

> OxyContin is a mu-agonist opioid with an abuse liability similar to morphine and is a Schedule II controlled substance.  Oxycodone products are common targets for both drug abusers and drug addicts. … Acute overdosage with oxycodone can be manifested by respiratory depression, somnolence progressing to stupor or coma, … and death.

*Id*. at *3-4.

Here, Plaintiff claims that ParaGard perforated her uterine wall, migrated to her abdomen and penetrated her sigmoid colon.  (Am. Compl., ¶¶ 20, 32-33.)  As a result, Plaintiff alleges that she underwent an "exploratory laparotomy" to remove the device and repair the utero-colonic fistula caused by the perforation.  (*Id*., ¶ 36.)  Plaintiff claims that ParaGard's labeling failed to warn of these risks.  (*Id*., ¶¶ 55-56.)

But in fact, ParaGard's labeling clearly and unambiguously warned of exactly the events and injuries alleged by Plaintiff in her Amended Complaint.  ParaGard's package insert included two sections; one directed at the prescribing doctor and one directed at the patient.  (ParaGard® T 380A Package Insert (approved Sept. 1, 2005) at 1-15, 16-20 (attached as Exh. 5).)  Under the bolded heading "**WARNINGS**" and the subheading "**Perforation**," the insert warned doctors that:

> **Partial or total perforation of the uterine wall** or cervix may occur rarely during placement, although it may not be detected until later. **Spontaneous migration** has also been reported.  If perforation does occur, remove ParaGard® promptly, since the copper can lead to intraperitoneal adhesions.  **Intestinal penetration**, intestinal obstruction, and/or **damage to adjacent organs may result** if an IUD is left in the peritoneal cavity. Pre-operative imaging followed by **laparoscopy or laparotomy is often required** to remove an IUD from the peritoneal cavity.

(*Id*. at 7 (emphases added).)  Under the bolded heading "**ADVERSE REACTIONS**," the insert

warned doctors that the most serious adverse events associated with IUDs include "Perforation"

and "Embedment."  (*Id*. at 9.)  In the section of the insert titled "**INFORMATION FOR**

**PATIENTS**," the labeling included the following warning:

> Perforation:  **Rarely, ParaGard® goes through the wall of the uterus, especially during placement.  This is called perforation.**  If ParaGard® perforates the uterus, it should be removed.  **Surgery may be needed.** Perforation can cause infection, scarring, or **damage to other organs.**  If ParaGard® perforates the uterus, you are not protected from pregnancy.

(*Id*. at 19 (emphasis added).)  The insert additionally warned that a "laparotomy" (surgery) may

be necessary to remove a device that has perforated the uterine wall.  (*Id*. at 7.)  Put simply, there

can be no question that ParaGard's labeling expressly warned of the risks that ParaGard can

perforate the uterine wall, migrate to the abdominal cavity, penetrate or cause damage to adjacent

organs, and require surgical removal.  Plaintiff's own expert admitted that ParaGard's labeling

unambiguously warned doctors of these risks, and that he understood these warnings.

(Bridgewater Dep. at 159 (Q. "Okay. You don't have—from your perspective, the product insert

and the product labeling on ParaGard has informed you of what you need to know about the

product in order to implant it safely into your patients; is that correct?"  A. "**It informs me as a**

**physician with—yes, with significant education and experience**.") (emphasis added).)  And

Plaintiff herself concedes that it is "general knowledge" that the risks associated with ParaGard

include perforation and embedment.  (Am. Compl., ¶ 15.)

Notably, "[w]hether the physician in fact reads the warning, or passes its contents along to the recipient of the drug is irrelevant." *E.R. Squibb & Sons, Inc. v. Farnes*, 697 So. 2d 825, 827 (Fla. 1997). But here, both Dr. Jacques and Plaintiff were aware of these warnings. Dr. Jacques, who prescribed ParaGard for Plaintiff and inserted the device, testified that she was aware of the risks based on her review of ParaGard's labeling:

> Q.   Okay. And you knew that since your residency that if—a possible event was that the IUD could perforate or migrate out of Ms. Hudson's uterus and penetrate into her sigmoid colon, correct?
>
> A.   Yes, sir.
>
> Q.   And you prescribed it to her with knowledge that that possibly could happen?
>
> A.   Yes, sir.
>
> …
>
> Q.   Okay. And you knew that from your training and experience and you also knew that from what was in the labeling for ParaGard, correct?
>
> A.   Correct, sir.

(Jacques Dep. at 67-68.) And Dr. Jacques also testified that, at the time she prescribed ParaGard for Plaintiff, it was her practice to discuss these risks with her patients. (*Id*. at 27 (Q. "Did you— we talked earlier about the risk that you were aware of since residency of perforation or migration, expulsion. Did you talk with your patients about those risks in [ ] or around February or March of 2008 when you would be talking with them about a ParaGard IUD?" A. "When I would insert an IUD or when I plan on it, that was part of the discussion with those patients, yes.").) Plaintiff admits that she received and reviewed the package insert from Dr. Jacques. (May 28, 2015 Deposition of Y. Hudson ("May 2015 Hudson Dep.") at 190 (attached as Exh. 17).)

It is therefore undisputed ParaGard's labeling clearly and unambiguously warned of the very same events and injuries alleged by Plaintiff in her Amended Complaint, and it is undisputed that both Dr. Jacques and Plaintiff received these warnings.  On these facts, summary judgment is warranted.

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY LACK OF PROXIMATE CAUSATION.

### A.   Dr. Jacques Was Independently Aware of the Risks Associated With ParaGard.

Plaintiff's claims separately fail because Dr. Jacques was independently knowledgeable of the risks associated with ParaGard.  Under Florida law, "the causal link between a patient's injury and the alleged failure to warn is broken if the treating physician had substantially the same knowledge of the risks posed by [a prescription drug] as an adequate warning from the manufacturer should have communicated."  *Horrillo v. Cook Inc.*, No. 10-15327, 2012 WL 6553611, at *3 (11th Cir. Nov. 7, 2012) (internal quotation marks and citation omitted).  *See also Felix*, 540 So. 2d at 105 ("even if it could be said that there was a factual dispute concerning the adequacy of the warning, any breach of the duty to warn in this case could not have been the proximate cause of the damage.  The court reached this conclusion because the prescribing physician testified that he fully understood the warnings and also had prior knowledge of the teratogenic propensity of Accutane.").  *Felix* is on all fours with this case.

In her deposition, Dr. Jacques testified at length regarding her extensive knowledge— from the time of her residency, years prior to Plaintiff's ParaGard insertion—of the risks associated with ParaGard and other IUDs, including the risks that an IUD can perforate the uterine wall, migrate to the abdominal cavity, damage adjacent organs, and require surgical removal.  (Jacques Dep. at 13, 14-15.  *See also id*. at 67 (Q. "Okay.  And you knew since your residency that if—a possible event was that the IUD could perforate or migrate out of Ms.

Hudson's uterus and penetrate into her sigmoid colon, correct?"  A. "Yes, sir.").)  Dr. Jacques

testified that her knowledge was based on her training, medical literature, and experience as a

practicing OB/GYN, including her experience removing IUDs from patients' abdominal cavities.

(*Id*. at 13, 68.)  Dr. Jacques also testified that she had "no doubt" that she had adequate training

and experience to counsel patients concerning these risks, and that there was nothing more Teva

needed to tell her to enable her to effectively counsel patients.  (*Id*. at 70-71.)

**B.     There Is No Evidence That Dr. Jacques Would Not Have Prescribed ParaGard Had Plaintiff's Alternative Warning Been Included in ParaGard's Labeling.**

Although he conceded at deposition that he has no specialized training or experience with

prescription drug warnings and "is not a warnings expert," Dr. Bridgewater intends to offer the

opinion that the version of ParaGard's labeling approved by the FDA in 2005[3] and in effect at

the time of Plaintiff's ParaGard insertion should have included language from the prior version

of the label identifying the specific types of organ damage that ParaGard can cause:

> Q.     Let me ask you this question:  Your only complaint with this language is that it is missing the language that reads "abdominal adhesions, intestinal penetration, intestinal obstruction, local inflammatory reaction with abscess formation and erosion of adjacent viscera."  Your complaint is that all of those things have been reduced to "damage to adjacent organs."
>
> A.     Yes.

(Bridgewater Dep. at 201.)  As described above, Dr. Bridgewater's opinion is factually incorrect.

In any event, to prove that the alleged inadequate warnings were a proximate cause of Plaintiff's

---

[3]     On October 19, 2004, FEI Women's Health LLC—then the owner of ParaGard—submitted a Supplemental New Drug Application to the FDA for a labeling change.  Over the next several months, the FDA and FEI engaged in extensive consultations regarding the label.  On September 1, 2005, the FDA approved the agreed-upon label language.  (*See* Sept. 1, 2005 Letter from FDA to FEI Women's Health LLC, available at http://www.accessdata.fda.gov/ scripts/cder/drugsatfda/index.cfm?fuseaction=Search.Label_ApprovalHistory#apphist.)

alleged injuries, Plaintiff must offer admissible evidence that Dr. Bridgewater's additional language identifying the specific types of organ damage would have caused Dr. Jacques not to prescribe ParaGard for Plaintiff.  *See Mason*, 27 So. 3d at 76  (plaintiff could not prove proximate causation because plaintiff's prescribing doctor testified that, even if the warning had included additional information suggested by plaintiff's expert, he still would have prescribed the drug for plaintiff).  But Plaintiff has no such evidence and therefore cannot meet her burden.  (*See generally* Jacques Dep.)

It is undisputed that Dr. Jacques possessed independent knowledge of the risks associated with ParaGard, including the potential for the very same events alleged by Plaintiff in her Amended Complaint.  Separately, Plaintiff has no evidence to show that her proffered expert's alternative warning would have caused Dr. Jacques not to prescribe ParaGard to Plaintiff.  For each of these reasons, Plaintiff cannot meet her burden of proving proximate causation.

## III.   PLAINTIFF'S CLAIMS ARE BARRED BY FLA. STAT. § 768.1256.

Under Florida law, when a product complies with federal or state codes or regulations, there is a rebuttable presumption that the product is not defective and that the manufacturer is not liable.  *See* Fla. Stat. § 768.1256.  Section 768.1256 provides in relevant part as follows:

    (1)    In a product liability action brought against a manufacturer or seller for harm allegedly caused by a product, there is a rebuttable presumption that the product is not defective or unreasonably dangerous and the manufacturer or seller is not liable if, at the time the specific unit of the product was sold or delivered to the initial purchaser or user, the aspect of the product that allegedly caused the harm:

        (a)    Complied with federal or state codes, statutes, rules, regulations, or standards relevant to the event causing the death or injury;

        (b)    The codes, statutes, rules, regulations, or standards are designed to prevent the type of harm that allegedly occurred; and

> (c) Compliance with the codes, statutes, rules, regulations, or standards is required as a condition for selling or distributing the product.

*Id*.

This presumption clearly applies here.  This is a product liability action concerning ParaGard, brought against its manufacturer, founded on an allegation that ParaGard's warnings were inadequate and thereby caused harm.  (*See* Am. Compl., ¶ 21.)  It is undisputed that, at all relevant times:  (1) ParaGard was approved by the FDA pursuant to the Federal Food, Drug, and Cosmetic Act ("FFDCA") (*see* Nov. 15, 1984 Letter from FDA to The Population Council (attached as Exh. 3)), (2) the purpose of the FFDCA is to ensure that ParaGard and other prescription drugs are "safe and effective" and that harm such as that alleged by Plaintiff does not occur, *see* 21 U.S.C. § 393(b)(2)(B), and (3) FDA approval pursuant to the FFDCA is required as a condition of selling ParaGard, *see* 21 U.S.C. § 355(a).

Given that the presumption applies, Plaintiff must come forward with specific and admissible evidence showing that the deficiency ParaGard's warnings alleged by Dr. Bridgewater resulted in ParaGard being "defective and unreasonably dangerous."  *See In re Aredia and Zometa Prods. Liab. Litig.*, No. 3:06-MD-1760, 2010 WL 813459, at *2 (M.D. Tenn. Mar. 3, 2010) (applying Florida law).  But, as already discussed, Plaintiff has no such evidence.

## IV.   PLAINTIFF CANNOT PROVE GENERAL OR SPECIFIC CAUSATION.

It is black letter Florida law that, in order to survive summary judgment in a product liability case, the plaintiff must come forward with evidence of both general and specific causation.  *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1239 (11th Cir. 2005) (a plaintiff in a drug/toxic tort case must prove general and specific causation by admissible expert testimony).  General causation asks the question whether a product *can* cause an alleged harm and can be established through clinical and epidemiological studies, peer-reviewed medical literature, or

testimony from a qualified expert built upon a reliable, testable scientific methodology.  *See Hendrix ex rel. G.P. Evenflo Co., Inc.*, 609 F.3d 1183, 1195-96 (11th Cir. 2010) (holding that proposed expert's failure to provide reliable evidence of general causation warranted exclusion). Specific causation asks the question whether a product *did in fact* cause the plaintiff's alleged harm and can be established through a differential diagnosis that eliminates other potential causes. *Id*.

Here, Plaintiff cannot prove either general causation or specific causation.  As set forth more fully in the accompanying *Daubert* Motion, both of Plaintiff's proffered experts disclaim the necessary expertise to opine on the cause of Plaintiff's alleged injuries (gastroparesis, seizures, neurological problems) and admit that they have not followed any methodology, much less a reliable, testable, methodology to form any opinions on the cause Plaintiff's alleged injuries in this case.  (*See* Starke Dep. at 14; Bridgewater Dep. at 132, 144-45.)  Summary judgment is warranted.

## CONCLUSION

For the foregoing reasons, the Court should enter summary judgment for Teva on each of Plaintiff's claims

Dated:  July 7, 2015

Respectfully submitted,

/s/ David A. Coulson

David A. Coulson (Fla Bar No. 176222)
Courtney B. Green (Fla. Bar No. 052622)
GREENBERY TRAURIG
333 SE 2nd Avenue Suite 4400
Miami, Florida 33131
Tel: (305) 579-0500
Fax: (305) 579-0717
coulsond@gtlaw.com
greenco@gtlaw.com

Jennifer G. Levy *(pro hac vice)*
Jason R. Parish *(pro hac vice)*
Mike Kilgarriff *(pro hac vice)*
KIRKLAND & ELLIS LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 879-5000
Facsimile:  (202) 879-5200
jennifer.levy@kirkland.com
jason.parish@kirkland.com
mike.kilgarriff@kirkland.com

Jeffrey F. Peck *(pro hac vice)*
Joseph P. Thomas *(pro hac vice)*
Ulmer & Berne LLP
600 Vine Street
Cincinnati, Ohio 45202
Telephone: (513) 698-5000
jpeck@ulmer.com
jthomas@ulmer.com

*Attorneys    for    Defendants    Teva
Pharmaceuticals   USA,   Inc.   and   Teva
Branded   Pharmaceutical   Products   R&D,
Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

**I HEREBY CERTIFY** that on July 7, 2015, I electronically filed the foregoing

document with the Clerk of Court using CM/ECF.  I also certify that the foregoing document is

being served this day on all counsel of record identified on the Service List below in the manner

specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in

some other authorized manner for those counsel or parties who are not authorized to receive

electronically Notices of Electronic Filing.

> Gregory D. Curtis Esq.
> 17325 NW 27th Ave. #103
> Miami Gardens, Florida 33056
> Tel: (305) 622-9199
> Fax: (305) 622-9129
> ggcurtis1999@yahoo.com
> curtislawoffice@bellsouth.net
>
> Willie E. Gary, Esq.
> Sekou Gary, Esq.
> Glenn Crickenberger, Esq.
> Gary, Williams, Parenti, Watson & Gary, P.L.
> 221 South East Osceola Street
> Stuart, FL 34994
> Tel: (772) 283-8260
> Fax: (772) 283-4996
> tb@williegary.com
> Sekou@williegary.com
> glenn@williegary.com
> jso@Williegary.com
> tmc@williegary.com

> /s/ David A. Coulson
> DAVID A. COULSON